# EX PARTE UNITED STATES.

No. 19, original.   Argued November 7, 1932.—Decided December 5, 1932.

*Solicitor General Thacher*, with whom *Assistant Attorney General Dodds* and *Messrs. Wm. H. Ramsey* and *Erwin N. Griswold* were on the brief, for the United States.

242

Mr. *Francis Biddle* for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an application for a writ of mandamus requiring the federal district judge sitting in the United States District Court for the Eastern District of Pennsylvania

and the court itself to set aside an order denying a petition of the United States attorney for the issue of a bench warrant for the arrest of Joseph V. Wingert, [see *United States* v. *Wingert*, 55 F. (2d) 960] and directing that such bench warrant be issued. The case is here for decision upon the return of the court and judge to a rule to show cause why the application for the writ should not be granted. The facts follow.

On March 10, 1932, a grand jury for the district, duly empaneled, returned an indictment against Wingert, charging him with violating certain provisions of the banking laws of the United States. No question is raised as to the regularity of the proceedings before the grand jury, or as to the sufficiency of the indictment. On March 22, the United States attorney presented to the court a written petition praying that a bench warrant issue for Wingert's arrest. The district court, with nothing before it, so far as the record discloses, but the petition and the indictment, denied the petition and refused to issue the warrant. The sole ground alleged in the return for such denial is that the matter was within the judicial discretion of the court, and, therefore, not subject to mandamus proceedings.

■ It first is necessary to determine whether under these facts we have jurisdiction to issue the writ. Section 716, Rev. Stats. (§.262 of the Judicial Code, U. S. C., Title 28, § 377), provides that this court and other federal courts " shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." As early as 1831 it was settled that this court had power to issue a mandamus directed to a federal circuit court commanding that court to sign a bill of exceptions, such action being in the nature of appellate jurisdiction. *Ex parte Crane,* 5 Pet. 190, 193. In *Marbury* v. *Madison,* 1 Cranch 137, 175, it was held

that to warrant the issue of a mandamus by this court, in cases where original jurisdiction had not been conferred by the Constitution (see *Kentucky* v. *Dennison,* 24 How. 66, 97), it must be shown to be an exercise of appellate jurisdiction, or to be necessary to enable the court to exercise its appellate jurisdiction. *McClellan* v. *Carland,* 217 U. S. 268, 280, laid down the general rule applicable both to this court and to the circuit courts of appeals, that the power to issue the writ under R. S. § 716 is not limited to cases where its issue is required in aid of a jurisdiction already obtained, but that " where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below." See also *Delaware, L. & W. R. Co.* v. *Rellstab,* 276 U. S. 1, 5; *In re Babcock,* 26 F. (2d) 153, 155; *Barber Asphalt Paving Co.* v. *Morris,* 132 Fed. 945, 952-956.

Perhaps it would be enough to satisfy the test afforded by these decisions to point to the limited authority of this court under c. 2564, 34 Stat. 1246, U. S. C., Title 18, § 682 (U. S. C. Title 28, § 345) to exercise direct appellate jurisdiction to review a decision of the district court in the possible event that some action of that court might give rise to a right of review at the instance of the government. We prefer, however, to put our determination upon the broader ground that, even if the appellate jurisdiction of this court could not in any view be immediately and directly invoked, the issue of the writ may rest upon the ultimate power which we have to review the case itself by certiorari to the circuit court of appeals in which such immediate and direct appellate jurisdiction is lodged.

It is true this court has held that it was without authority to issue a writ of mandamus to the Supreme Court of the District of Columbia, because, since the creation of the Court of Appeals of the District of Columbia, this

court could not review the judgments and decrees of the supreme court of the district directly by appeal or writ of error. *In re Massachusetts,* 197 U. S. 482. And see also *In re Glaser,* 198 U. S. 171. Assuming that an application of those decisions to the present case would necessitate a denial of the writ, later cases clearly indicate that the rule as thus limited no longer obtains. In *McClellan* v. *Carland, supra,* p. 279, this court significantly suggested that it should be slow to reach a conclusion which would have the result of depriving the court of the power to issue the writ in proper cases to review the action of the federal courts inferior in jurisdiction to itself. And in *Ex parte Abdu,* 247 U. S. 27, 28, Mr. Chief Justice White, speaking for the court, said:

" The existence of ultimate discretionary power here to review the cause on its merits and the deterrent influence which the refusal to file must have upon the practical exertion of that power in a case properly made gives the authority to consider the subject which the rule presents."

This statement, it is true, related to the refusal of a circuit court of appeals to direct its clerk to file the record in an appeal from a district court; but it was followed broadly in *Los Angeles Brush Corp.* v. *James,* 272 U. S. 701. In that case an application for mandamus was made to this court to compel a district court to hear a patent case, instead of referring it to a master, in alleged violation of Equity Rules 46 and 59. This court, after pointing out that the hearing of the cause in review would normally be had in the circuit court of appeals and could come here only in due course by certiorari, and saying that it was unnecessary to decide whether the writ would issue direct to the district court in matters as to which the circuit court of appeals would or should ordinarily have power to issue a mandamus to the same end in aid of its appellate jurisdiction, continued (p. 706):

" However that may be, we think it clear that where the subject concerns the enforcement of the Equity Rules which by law it is the duty of this Court to formulate and put in force, and in a case in which this Court has the ultimate discretion to review the case on its merits, it may use its power of mandamus and deal directly with the District Court in requiring it to conform to them. *Ex parte Abdu,* 247 U. S. 27, 28; *Ex parte Crane,* 5 Peters 190, 192, 193, 194. This is not to say that in every case where the Equity Rules are the subject of interpretation and enforcement in the District Court, such questions may as of course be brought here and considered in a direct proceeding in mandamus. The question of thus using the writ of mandamus would be a matter of discretion in this Court, and it would decline to exercise its power where the issue might more properly come up by mandamus in an intermediate appellate court or in regular proceedings on review. If it clearly appeared, however, that a practice had been adopted by district judges, as to the order or procedure in hearing causes, at variance with the equity rules, our writ might well issue directly to such judges."

In other, and readily distinguishable, cases where the direct appellate jurisdiction was vested in the circuit court of appeals, this court, in the exercise of its discretion, has declined to issue the writ and relegated the applicant to his remedy in that court. *Ex parte Apex Electric Mfg. Co.,* 274 U. S. 725; *Ex parte Daugherty,* 282 U. S. 809; *Ex parte Krentler-Arnold Hinge Last Co.,* 286 U. S. 533.

The rule deducible from the later decisions, and which we now affirm, is, that this court has full power in its discretion to issue the writ of mandamus to a federal district court, although the case be one in respect of which direct appellate jurisdiction is vested in the circuit court of appeals—this court having ultimate discretionary jurisdiction by certiorari—but that such power will be exercised only where a question of public importance is involved, or

where the question is of such a nature that it is peculiarly appropriate that such action by this court should be taken. In other words, application for the writ ordinarily must be made to the intermediate appellate court, and made to this court as the court of ultimate review only in such exceptional cases. That the present case falls within the latter description seems clear. The effect of the refusal of the district court to issue a warrant upon an indictment fair upon its face and properly found and returned is equivalent to a denial of the absolute right of the government, as matters stand, to put the accused on trial, since that cannot be done in his absence. The mere statement discloses the gravity and public importance of the question. It is obvious that if a like attitude should be taken by district courts generally, serious interference with the prosecution of persons indicted for criminal offenses might result. Undoubtedly, upon the theory presented by the government, mandamus is the appropriate remedy; and the writ may well issue from this court in order to expedite the settlement of the important question involved, and, incidentally, in furtherance of the general policy of a prompt trial and disposition of criminal cases. Accordingly, we pass to a consideration of the merits.

■ The theory of the court below is that its denial of the petition of the government for a bench warrant was an exercise of its judicial discretion, and, therefore, not reviewable by mandamus. This view of the matter cannot be sustained. The question whether there was probable cause for putting the accused on trial was for the grand jury to determine, and the indictment being fair on its face, the court to which it was returned, upon the application of the United States attorney, should have issued the warrant as a matter of course. Cases are cited said to be to the contrary, but they are not in point. They are either cases where the warrant was sought from a magistrate upon complaint in the absence of an indictment, or

was sought under the removal statute, R. S. § 1014, U. S. C., Title 18, § 591. Obviously, the first named cases are without application. In cases arising under the removal statute the indictment is produced and considered not as a basic pleading, but merely as evidence establishing or tending to establish the commission of the offense and which may or may not settle the question of probable cause. In the trial court to which the indictment has been returned it is "the very foundation of the charge." *Benson* v. *Henkel,* 198 U. S. 1, 12; *Morse* v. *United States,* 267 U. S. 80, 83; *Fetters* v. *United States,* 283 U. S. 638, 642.

It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer. Compare *McGrain* v. *Daugherty,* 273 U. S. 135, 156–158; *Hale* v. *Henkel,* 201 U. S. 43, 60–62. The refusal of the trial court to issue a warrant of arrest under such circumstances is, in reality and effect, a refusal to permit the case to come to a hearing upon either questions of law or of fact, and falls little short of a refusal to permit the enforcement of the law. The authority conferred upon the trial judge to issue a warrant of arrest upon an indictment does not, under the circumstances here disclosed, carry with it the power to decline to do so under the guise of judicial discretion; or, as this court suggested in *Ex parte United States,* 242 U. S. 27, 42, the power to enforce does not inherently beget a discretion permanently to refuse to enforce. In *United States* v. *Thompson,* 251 U. S. 407, an order of a federal district court quashing an indictment on the ground that the charge, having been submitted to a previous grand jury, had been resubmitted to a later one without leave of court first obtained, was set aside. This court there said that the power and duty of the grand jury to investigate is original

and complete, and may be exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not exhausted or limited by adverse action taken by a previous grand jury, and that a United States district attorney may present, without leave of court, charges which a previous grand jury has ignored. The necessary effect of the district court's order, it was said (pp. 412–413), "was to bar the absolute right of the United States to prosecute by subjecting the exercise of that right, not only as to this indictment but as to all subsequent ones for the same offenses, to a limitation resulting from the exercise of the judicial power," and to bar the lawful authority of the United States attorney and of the grand jury "by the application of unauthorized judicial discretion." These observations are pertinent here.

*Rule made absolute.*